SCHOOL DISTRICT NO. 17, OF GARFIELD COUNTY, v. T. J. ZEDIKER, *County Superintendent of Public Instruction.*

1. SCHOOL DISTRICTS—*Powers of Legislature Over.* A school district is but a subordinate agency of the Territory, doing the work of the Territory. It is a creature of the legislature. The legislature may create or abolish a school district, or, it may change their boundaries without consulting the inhabitants. It may thus change their boundaries for any reason that may be satisfactory to it; and it may do this as well through a subordinate agency or officer, as by direct legislative act.

2. SCHOOL DISTRICTS—*Changes Of.* By § 5760, of the Statutes of 1893, the the legislature intended to provide for a systematic and uniform division of the territory embraced in each county into school districts; that for that purpose they invested the county superintendent of public instruction with power to divide the territory of the county into convenient districts and to change such districts when the interest of the inhabitants of the county required such division or change.

3. TOPOGRAPHICAL AND PHYSICAL CONDITIONS—*Effect Of.* The superintendent of public instruction in m ng such division or change, is not limited to those cases only, where the topographical and physical conditions alone make such division or change necessary. It is not necessary that topographical or physical conditions requiring that changes should be made in the districts should exist as prerequisite and jurisdictional fact, before the superintendent of public instruction is authorized to act or make such changes, if the interests of the inhabitants of the county in other respects requires that such changes should be made.

4. TOPOGRAPHICAL AND PHYSICAL CONDITIONS—*Intent of Legislature Regarding.* The clause of the statute relating to topographical and physical conditions was intended to be directory merely. It was intended by the legislature that the superintendent of public instruction should divide the county into convenient school districts, and change such districts when the interests of the inhabitants of the county required, but that in making such division or change, he should consider the topographical and physical conditions which might interfere with convenient attendance on the schools.

5. SUPERINTENDENT OF PUBLIC INSTRUCTION—*Powers of Judical.* The powers conferred upon the superintendent of public instruction to divide the county into school districts and to change such districts, is of a judicial nature, and in their performance require the exercise of a judicial discretion; and when exercised, unless there has been an abuse of such discretion, the courts cannot interfere.

*Error from the District Court of Garfield County.*

*W. H. Robb*, for plaintiff in error.

*J. W. Clevinger*, for defendant in error.

The opinion of the court was delivered by

TARSNEY, J.: This case arises out of the action of the defendant in error, T. J. Zediker, as county superintendent of public instruction for Garfield county, in attempting to change the boundaries of the school districts in said county. At the time of such proposed change, plaintiff in error, school district No. 17, in said county was composed of sections 1, 2, 3, 10, 11, 12, and the north half of sections 13, 14, 15, in township 21, range 6, and the change proposed was in pursuance of a plan of redistricting the whole county. It was not made because of any peculiar interests of the inhabitants of said district No. 17, requiring such change at that time.

Defendant in error contended that the proposed action by said superintendent of public instruction was a proper exercise of authority vested in him by § 5760 of the Statutes of Oklahoma, 1893, p. 1082, which said section is as follows:

" It shall be the duty of the county superintendent of public instruction to divide the county into a convenient number of school districts and to change such districts when the interests of the inhabitants thereof require it, by making them conform to existing topographical and physical conditions, but only after · twenty days' notice thereof, by written notice posted in at least five public places in the district to be changed; but no district shall be formed containing less than eight persons of school age, neither shall a new school district be formed or changed so as to contain more than three miles square, except in counties in the Cheyenne and Arapahoe country and in Beaver county, and all sparcely settled dis-

tricts in any county, and none having a bonded indebt-edness shall be so reduced in territory that such indebt edness shall exceed five per cent. of the assessed property valuation. *Provided:* that any person interested may appeal to the board of county commissioners from the action of the county superintendent. Such superintendent shall number school districts when they are formed, and he shall keep in a book for that purpose a description of the boundaries of each school district and part of district in his county, with plat of same, date of organization, date and full record of all changes of boundaries, and a list of district officers in his county, the date of election or appointment and the time the term of each is to expire."

The contention of plaintiffs in error is, that when a school district has once been formed, it becomes an incorporated body, embracing certain territory over which the people of the district have control for the purpose of public schools therein, and that to secure permanency in the same, the legislature reserved to itself the right to change the boundaries, except for one cause, viz, that when by reason of topographical or physical conditions it is in the interest of the people of their district or any portion of them to change the boundaries, the superintendent may do so, so as to conform to such conditions. That such conditions requiring such change must exist as a pre-requisite and jurisdictional fact before the county superintendent of public instruction is authorized to act or make any change. We think this is too narrow a construction of the statute, and would be a limitation upon the duties and powers of the superintendent not contemplated by the legislature. It is argued that because the legislature itself in 1890 divided the Territory into school districts it shows a legislative intent to retain in the legislature the general control of the matter of re-districting, and that the amendment to the

law found in the acts of 1893, and above cited, was only intended to vest in the county superintendent the right to change the districts when, and when only, it should appear that the topographical and physical conditions of the district required the same. We think the legislature intended by the act of 1890, and the changes thereof and amendments incorporated in § 5760, *supra*, to provide a systematic and uniform division of the Territory into school districts.  That contemplating that this purpose could be better accomplished by local agencies or officials in the several counties, they provided and made it the duty of the county superintendent of public instruction to divide the county into a convenient number of school districts, and authorized him to change such districts when the interest of the inhabitants thereof required it, but that recognizing that in a new country like this, where streams are unbridged and other physical conditions that might interfere with convenient attendance upon the schools exist, they required that such superintendent should take into consideration such topographical and physical conditions in establishing or changing such districts.

We do not think it was the intention of the legislature to limit the authority of the superintendent in making such changes to those cases only where the topographical and physical conditions alone made the change necessary and proper, but that he is authorized to divide the county into districts and to change the boundaries of such districts whenever the interests of the inhabitants of the county require the same to be done, and that the provision relating to topographical and physical conditions was intended to be directory upon him, that is to say, that in dividing the county into a convenient number of school districts and changing the districting

of said county, he should take into consideration and make such changes so as to conform to the topographical and physical conditions that might exist. It is true that the primary authority to lay off the Territory into school districts or to make changes therein is in the legislature, but such power may be delegated to a subordinate body or official, and often it becomes necessary that it shall be so delegated by reason of the fact that a subordinate local body or officer may have, and does have, a better knowledge of conditions than could be possessed by the legislature as a body. We think that the legislature by § 5760 intended to delegate all the powers it possessed regarding the division of the counties into school districts, and the changing of the boundaries thereof to the county superintendent of public instruction, subject to the restrictions contained in that section. The argument, that because a school district is a *quasi* corporation exercising certain powers, functions, and authority over an established district, that such district cannot be changed in its boundaries except by the inhabitants themselves, is not tenable. The legislature that can create can abolish these districts. It can change their boundaries without consulting the inhabitants. The school district is but a subordinate agency of the state, doing the work of the state. It is the creature of the state and if the legislature itself can change the boundaries of a school district for any reason which may be satisfactory to it, it can accomplish this purpose through a subordinate agency or officer. This it has provided for doing by the statute cited. It has provided that the county superintendent of public instruction may divide the county into convenient districts when the interest of the inhabitants thereof, that is, when the interest of the inhabitants of the county, requires the same.

Counsel for plaintiff in error complains that the court below "seems to have ignored the autonomy of the district, and treated the whole county as a unit in school matters." We think the construction put upon this proposition by the court below was a correct one; that the county is the unit in school matters. The superintendent of public instruction is a county officer, having jurisdiction throughout the entire county. It is, by the language of this statute, made his duty not to establish school districts, but to divide the county into a convenient number of school districts, and to change such districts when the interests of the inhabitants thereof require it. The district could not be considered a unit because it was a physical impossibility for the superintendent to change the exterior boundaries of any one district without changing the boundaries of the contiguous districts. If the contention of counsel for plaintiff in error should be sustained it would produce inextricable confusion, and result in changes of the boundaries and conditions of several districts upon the initiative of the inhabitants of one. We think the proper interpretation of the law is, that the legislature had in design the division of the several counties into convenient school districts when the interest of the inhabitants of the county required the same to be done; but directed him that in the performance of this duty he should take into consideration and make such districts conform to the topographical and physical conditions which might exist.

As the powers thus conferred upon the superintendent of public instruction were judicial in their nature, and in their performance required the exercise of a judicial discretion, unless there has been an abuse of such discretion the courts cannot interfere.

We find no substantial error in this record and the judgment of the court below is accordingly affirmed.

All the Justices concurring.