## FELKNER v. WINNINGHAM *et al.*

No. 3028.  Opinion Filed January 9, 1912.

Rehearing Denied May 14, 1912.

(122 Pac. 534.)

1. **SCHOOLS AND SCHOOL DISTRICTS—Territory Lying in More Than One County—Procedure.** The consolidation of school districts comprising territory lying in more than one county is authorized.

(a)  In such case, all of the districts proposed to be consolidated having voted to unite, the county superintendents of each of the counties in which such districts lie must act together by meeting and declaring said districts disorganized, and then and there forming a consolidated district composed of the several voting to unite.

(b)  Said superintendents are also required to designate a time and place for the meeting of the voters of the said districts so disorganized for the purpose of electing officers for and completing the organization of said consolidated district.

2. **SAME—Consolidation—Appeal.** From the action of the county superintendents thus acting jointly, an appeal may be had to the State Superintendent of Public Instruction, but not to the board of county commissioners of either of the counties in which any of said school districts are located.

(Syllabus by the Court.)

*Error from District Court, Washita County;*
*James R. Tolbert, Judge.*

Injunction by J. H. Felkner against W. F. Winningham and others.  From an order dissolving the injunction, plaintiff brings error.  Affirmed.

*Richard A. Billups, T. A. Edwards,* and *Ara R. Ash,* for plaintiff in error.

*Brett & Rice,* for defendants in error.

WILLIAMS, J.  On the 23d day of May, 1911, an election was held in school district No. 66, Washita county, Okla., to determine whether or not said district would disorganize and form a consolidated district with districts 61 and 62 of Beckham coun-

ty, Okla. The clerk of said district No. 66 reported to the county superintendent that said election resulted in favor of consolidation. On the 17th day of June, 1911, the county superintendent of Washita county, acting upon the certificate of the clerk of said district, made his order declaring district 66 in Washita county disorganized, and proclaiming a consolidated district formed, comprising said district No. 66 in Washita county and districts numbered 61 and 62 in Beckham county, and designated a time and place to hold an election to select officers for said consolidated district. On the 23d day of June, 1911, within ten days after the county superintendent disorganized said district 66, an appeal was taken therefrom setting forth various reasons why said order disorganizing said district No. 66 should not have been made, among which was that a majority of the voters voting at said election did not vote in favor of consolidation. This appeal was filed with the board of county commissioners of said Washita county; the said district 66 lying entirely within said county. On the 6th day of July, 1911, the appeal was dismissed by the board of county commissioners on the ground that they had no jurisdiction to hear and determine the same. On the 7th day of July, 1911, the plaintiff in error filed a petition in the district court, praying for a writ of mandamus to require the said commissioners to hear said appeal. On the 7th day of July, 1911, plaintiff in error filed a petition in the district court praying for a temporary order of injunction restraining defendants in error as directors of the proposed consolidated district, of which district 66 formed a part, from performing any acts as directors of such proposed consolidated district until the determination of said mandamus proceeding, and a temporary injunction was granted by the county judge in the absence of the district judge from the said county. On the 17th day of July, 1911, the defendants in error filed an unverified motion with the district court to have said injunction dissolved. The same was heard in chambers at Arapaho, and an order made dissolving the same. This proceeding in error is to review said order.

On March 10, 1905, the Legislature of the territory of Oklahoma passed an act entitled,

"An act to provide for the formation of consolidated school districts by the voluntary disorganization and consolidation of adjacent school districts, the establishment of consolidated schools in which certain branches shall be taught, the transportation of pupils to and from school, and the disposition of the property and indebtedness of the said disorganized districts." (Sess. Laws 1905, pp. 358, 362.)

Section 1 of said act provides:

"Meetings of the voters of any two or more adjacent school districts may be called in their respective districts for the purpose of voting on the proposition of uniting with the other said adjacent districts for the purpose of establishing a consolidated school, said call to be made in the same manner as provided by law for the calling of special district meetings. If three-fourths of the voters residing in each of said districts shall vote to so unite, then the clerk of each of said districts shall thereupon make a written report of such action to the county superintendent of the county in which said districts are located; provided that the vote in each district shall be made conditional upon its carrying in all of said districts, and provided further that unorganized territories and legally organized school districts containing a school population of one hundred persons or more, may organize under the provisions of this act. The number of persons entitled to vote in said election shall for the purpose of this act be determined by the last returns of the enumeration of the respective districts included in said school district."

Section 2 of said act provides:

"The county superintendent shall, upon receipt of the reports as provided in section 1 of this act, declare said districts disorganized and shall form a consolidated district composed of the several districts voting to unite, and he shall designate a time and place for the meeting of the voters of the said districts so disorganized for the purpose of electing officers and completing the organization of said consolidated district. He shall give notice of said meeting by posting written or printed notices, stating the time, place and purpose of said meeting in at least three public places in each of the disorganized districts not less than ten days prior to the time of meeting; provided, that in the formation of consolidated districts comprising territory lying in more than one county, the county superintendents of said counties shall act together in the same manner as provided by law in the formation and control of joint districts, and at said meeting of the voters of the newly organized school district, shall select a build-

ing site, as near the center of population of such consolidated district as practicable."

At the first session of the Legislature after the erection of the state, said section 1 was amended to read as follows:

"Meetings of the voters of any two or more adjacent school districts may be called in their respective districts for the purpose of voting on the proposition of uniting with the other said adjacent districts for the purpose of establishing a consolidated school, said call to be made in the same manner as provided by law for the calling of special district meetings. If a majority of the votes cast in each of said districts shall be in favor of such consolidation, then the clerk of each of said districts shall thereupon make a written report of such action to the county superintendent of the county in which said districts are located. The vote in each district shall be made conditional upon its carrying in all of said districts; Provided, that unorganized territories and legally organized school districts containing a school population of one hundred persons or more may organize under the provisions of this act." (Sess. Laws 1907-1908, p. 670; section 8169, Comp. Laws 1909.)

In said section 1 as amended it is provided:

"If a majority of the votes cast in each of said districts shall be in favor of such consolidation, then the clerk of each of said districts shall thereupon make a written report of such action to the county superintendent of the county in which said districts are located."

Does this contemplate that all of said districts are to be located in one county, and that the report shall be made to the county superintendent of the county in which such districts are located, or does it mean that the clerks of the respective districts shall make a report to the respective county superintendents of the counties in which said districts are located? In order to determine the proper construction, it is. necessary to look to the other provisions of the act. The proviso in section 2 (section 8170, Comp. Laws 1909) is as follows:

"Provided, that in the formation of consolidated districts comprising territory lying in more than one county, the county superintendents of said counties shall act together in the same manner as provided by law in the formation and control of joint districts, and at said meeting of the voters of the newly organ-

ized school district, shall select a building site, as near the center of population of such consolidated district as practicable."

Section 8 of the act of March 10, 1905 (chapter 33, p. 361, Sess. Laws 1905), provides:

"In all matters relating to consolidated school districts, not provided for in this act, the law relating to school districts shall be in force where said laws are applicable."

The act of March 8, 1895 (article 6, c. 45, p. 245, Sess. Laws 1895; section 8080, Comp. Laws 1909), provides:

"When it shall become necessary to form a school district lying partly in two or more counties, the county superintendents of the counties in which the said tract of country shall be situated, when application shall be made in writing to any one of them by five householder residents therein, shall, if by them deemed necessary, meet and proceed to lay off and form the same into a school district, issue notices for the first district meeting, and shall file the proper papers in their respective offices, and such district so organized shall be designated 'Joint District No. ———, Counties of ———,' and the boundaries of such district shall not be altered except by the joint action of the superintendents of the several counties represented in said district; Provided, that if in the alteration of or refusal to alter the boundaries of any joint school district, any person or persons shall feel aggrieved, such person or persons may appeal to the Territorial [State] Superintendent of Public Instruction, and notice of such appeal shall be served on the superintendents of the several counties represented in said district within ten days after the rendition by them of the decision appealed from, which notice shall be in writing and shall state fully the objections to the actions of the county superintendents, and a copy thereof shall be filed with the Territorial [State] Superintendent of Public Instruction; and it shall be the duty of the county superintendents in whose possession are the papers connected with the action appealed from, to transmit the same to the Territorial [State] Superintendent of Public Instruction immediately upon being served with notice of appeal as hereinbefore provided, and thereupon the Territorial [State] Superintendent of Public Instruction shall fix a time for the hearing of said appeal, and notify the several county superintendents interested, and they shall take action in accordance therewith: And provided, further, that each joint district, except in matters relating to the alteration of the boundaries thereof, shall be under the jurisdiction and control of the superintendent of that county

represented in such district having the largest amount of territory embraced within the boundaries of such joint district."

Obviously, by the proviso to section 2, *supra,* consolidation is permitted when the districts lie in different counties. After the several clerks of the different districts have certified the result of the election in each district to the proper county superintendent of the different counties, then "the county superintendents of the counties in which the said tract of country shall be situated" are required to meet and declare said districts disorganized and form a consolidated district composed of the several districts voting to unite.

The county superintendents of said counties are also required to designate a time and place for the meeting of the voters of the said districts so disorganized for the purpose of electing officers and completing the organization of said consolidated district following the procedure prescribed by section 8170, Comp. Laws 1909.

From the action of the county superintendents, acting jointly, section 8080, Comp. Laws 1909, provides that an appeal may be had to the Territorial [State] Superintendent of Public Instruction, and that notice of said appeal shall be served on the county superintendents of the several counties represented in said district within ten days after the rendition by them of the decision appealed from, which notice shall be in writing and shall state fully the objections to the actions of the county superintendents, etc. It follows that an appeal from the action declaring these three districts, one of which lies in Washita county, and the other two in Beckham county, consolidated, did not lie to the board of county commissioners, and that said board had no jurisdiction to entertain said appeal.

As to whether said consolidated district has been legally formed, that question is not before this court for determination. But, as the petition for injunction was predicated upon the fact that the plaintiff in error was entitled to appeal to the board of county commissioners to have reviewed the action of the voters of school district No. 66 in voting to disorganize, it follows that

plaintiff in error was not entitled to the injunctive relief prayed for.

The judgment of the lower court is therefore affirmed.

TURNER, C. J., and HAYES, KANE, and DUNN, JJ., concur.