STATE *ex rel.* WEST, *Atty. Gen.,* v. BALZER *et al.*

No. 5336.   Opinion Filed March 10, 1914.

Rehearing Denied July 14, 1914.

(141 Pac. 777.)

**SCHOOLS AND SCHOOL DISTRICTS**—Consolidated Districts—Division —Appeal. By virtue of section 1, c. 107, p. 202, Sess. Laws 1910, and section 8, c. 33, art. 1, Sess. Laws 1905 (section 8176, Comp. Laws 1909), the county superintendent is granted power to change consolidated school districts in his county when the interests of the people thereof may require it, by making them to conform to existing topographical or physical conditions.

(a)   An appeal lies from the action of such county superintendent to the board of county commissioners.

(Syllabus by the Court.)

*Error from Superior Court, Garfield County;*
*Dan Huett, Judge.*

*Quo warranto* by the State, on the relation of Charles West, Atty. Gen., against George Balzer and others. Judgment for defendants, and plaintiff brings error. Affirmed.

*Chas. West,* Atty. Gen. (*H. G. McKeever,* Spl. Asst. Atty. Gen., and *H. J. Sturgis,* of counsel), for plaintiff in error.

*Garber & Kruse* and *Robberts & Curran,* for defendants in error.

PER CURIAM. This proceeding in error is to review *the action* of the trial court wherein the Attorney General, on relation of the state, instituted an action in the nature of *quo warranto* to oust certain school district officials. A certain consolidated school district, known as Consolidated School District No. 2, on appeal from the superintendent of public instruction to the board of county commissioners, was divided into four school districts, and the officers of said several school districts were sought to be ousted in said proceeding. The relief sought by the Attorney General was denied in the lower court, and the action of that court is here brought under review.

The question essential for determination is as to whether a county superintendent can divide a consolidated school district into two or more school districts. Section 1, c. 107, Sess. Laws 1910, amending the act of 1897 (Laws 1897, c. 34, art. 5, sec. 1), empowers the county superintendent to divide the county into a convenient number of school districts, and to change such districts when the interests of the people may require it by making them to conform to the existing topographical and physical conditions, providing that no district shall be changed under said act, except upon a petition signed by at least one-third of the qualified electors of said district desiring to be changed, and further providing that one-fourth of the qualified electors of any district affected by such change may join in an appeal to the board of county commissioners from the action of the county superintendent, which appeal shall be heard by a majority of the members of the board at their next regular meeting. The further additional limitation is imposed upon the authority of the county superintendent to make such change that:

"No district having a bonded indebtedness shall be so changed that such indebtedness shall exceed four per centum of the assessed property valuation of such district."

The school district is but a subordinate agency of the state, doing the work of the state.

In *School District No. 17 of Garfield County et al. v. Zediker et al.*, 4 Okla. 599, 47 Pac. 482, it is said:

"The school district is but a subordinate agency of the state, doing the work of the state. It is the creature of the state and if the Legislature of itself can change the boundaries of a school district for any reason which may be satisfactory to it, it can accomplish this purpose through a subordinate agency or officer. * * * It has provided that the county superintendent of public instruction may divide the county into convenient districts," and may change the boundaries of such districts whenever the interest of the inhabitants require it.

Section 8, c. 33, art. 1, Sess. Laws 1905 (section 8176, Comp. Laws 1909), provides:

"In all matters relating to consolidated school districts, not provided for in this act, the law relating to school districts shall be in force where said laws are applicable."

This section was construed by this court in *Board of County Commissioners v. Worrell*, 33 Okla. 390, 126 Pac. 785, wherein it was held:

"By virtue of section 1, c. 107, p. 202, Sess. Laws 1910, and section 8, of art. 1, c. 33, Sess. Laws 1905 (section 8176, Comp. Laws 1909), a county superintendent is granted the power to change consolidated school districts in his county when the interests of the people thereof may require it, by making them conform to existing topographical or physical conditions.

"(a) An appeal lies from the action of such county superintendent to the board of county commissioners."

In *Evinger v. Duke, ante,* 130 Pac. 147, *Board of County Commissioners v. Worrell* was followed and approved. Subsequent to such construction by this court the Fourth Legislature, in an act entitled "An act prescribing laws for the government of the common schools of Oklahoma; and repealing conflicting laws," re-enacted said section 8, wherein it was provided that:

"In all matters relating to consolidated school districts, not provided for in the preceding sections the law relating to school districts shall be in force where said laws are applicable." (Sess. Laws 1913, c. 219, art. 7, sec. 8, p. 537.)

In the re-enactment of this section the Legislature is presumed to have known the construction the former statute had received by this court, and to have adopted that construction. *Huddleston et al. v. Askey,* 56 Ala. 218; *Duramus v. Harrison,* 26

Ala. 326. A consolidated school district is a part of our common school system, a subordinate agency of the state, and is subject to the common school law. We are sustained in this conclusion by a legislative construction. The title of the act of May 22, 1913, heretofore referred to, to wit, "An act prescribing laws for the government of the common schools of Oklahoma; and repealing conflicting laws," is contained in said chapter 219 of the Session Laws of the Fourth Legislature, and said chapter is subdivided into the following articles:

Article 1.    State Superintendent.
Article 2.    County Superintendent.
Article 3.    Districts and Schools.
Article 4.    Joint Districts.
Article 5.    District Officers—Meetings—Finances.
Article 6.    Independent Districts—Cities—Towns.
Article 7.    Consolidated Districts.
Article 8.    Union Graded Schools.
Article 9.    Scholastic Census.
Article 10.   Agricultural and Industrial Education.
Article 11.   Normal Institutes and Teachers' Training Course.
Article 12.   Kindergartens.
Article 13.   Compulsory Education.
Article 14.   Examination of Teachers.
Article 15.   Separate Schools for Races.
Article 16.   Transfer of Pupils to Other Districts.
Article 17.   Miscellaneous.

All of these different divisions are a part of the common school system of the state. The officers of the school districts are identical with those of the consolidated school districts. Section 7875, Rev. Laws 1910. The powers and duties of the district board and of its several officers are the same as those provided by law for school district boards and their several officers. Section 7876, Rev. Laws 1910.

The annual meetings of the consolidated school districts are held on the same date as fixed by law for holding annual school meetings of each year, and have such powers and duties as are by law provided for annual school district meetings. Section 7879, Rev. Laws 1910.

"In all matters relating to consolidated school districts, not provided for in the preceding sections, the law relating to school districts shall be in force where said laws are applicable" is included the change of consolidated districts; inasmuch as such

change is not specifically provided for in the article relating to such school districts, the law relating to school districts providing for such change applies. The fact that there is a difference in the procedure as to the organization of the two different school districts does not prevent the general law authorizng a change of districts from being applicable to the change of consolidated districts. The question for the court is as to whether the statute providing for the change of the common school district can be applied to the consolidated school district. If so, the mandate of the Legislature must be carried out. The power is not in this court to raise the wisdom of the Legislature in enacting the law. The fact that it may result in the change of the boundaries of the district established by the vote of the people by the action of the county superintendent, subject to be reviewed by the board of county commissioners, goes to the judgment of the Legislature, and not as to the applicability of the statute. The suggestion that one-third of the voters would thereby defeat a majority is without foundation. A petition signed by one-third of the voters is only the initiatory step. Before the change can be made the county superintendent must be convinced that the proposed change would be to the best interests of the people to be affected, and his action in the premises is subject to be reviewed by the board of county commissioners. All of these officials are elected by the people and are responsible to the people. The electors of the common school district elect their officers by the majority vote and select a school site by a majority vote. Bonds to erect school districts are authorized by a two-thirds vote, and yet upon a proper petition and sufficient evidence the county superintendent or the board of county commissioners on appeal may oust from office the officers elected by a majority vote, may change the school site selected by a majority vote, and transfer the property and abolish the entire district by a proceeding the initiatory step of which is a petition signed by one-third of the qualified electors of the district. Such reasons were not held sufficient in *School District No. 17 of Garfield Co. et al. v. Zediker et al., supra,* to defeat the law.

The only question for us to determine is what the Legislature has done, and then it is for this court to follow same and not inquire into the wisdom of their action. We have passed on this question on its merits, on the assumption that, there being nothing in the record to the contrary, showing that the Attorney General had not been designated by the Governor to bring this action in the superior court, such authority existed.

It follows that the judgment of the trial court must be affirmed.

All the Justices concur.